Filed 11/21/24  P. v. Stanfield CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F087179 |
| Plaintiff and Respondent, | (Super. Ct. No.  F08906045) |
| v. | |
| DEAUNDRE NOBLE STANFIELD, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and Snauffer, J.

## INTRODUCTION

In 2010, appellant and defendant Deaundre Noble Stanfield (appellant) was convicted after a jury trial in the Superior Court of Fresno County case No. F08906045, of two counts of assault with a semiautomatic firearm with enhancements for personal use of a firearm, and other offenses. He was sentenced to a determinate term of 22 years four months, including a prior prison term enhancement, and the judgment was affirmed on direct appeal.

In or about 2022, appellant was identified by the Department of Corrections and Rehabilitation (CDCR) as a person eligible for recall and resentencing pursuant to Penal Code[1] section 1172.75, because a prior prison term enhancement was imposed. The trial court recalled appellant's sentence and conducted a full resentencing hearing, and appellant was sentenced to 19 years four months in prison.

On appeal, his appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant has filed a supplemental brief. We review his contentions and affirm.[2]

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] Appellant has been identified under different names in this case. Appellant's convictions occurred in the Superior Court of Fresno County case No. F08906045. The second amended information identified appellant as "Deandre Noble Stanfill aka [¶] Deaundre Noble Stanfield," with an interlineation that the "aka" was his true name with a birthdate of "4/3/80." The minute orders from appellant's trial identified him as "Deandre Stanfill" while the reporter's transcripts and verdict forms identified him as "Deaundre Stanfield.

The abstract of judgment from the original sentencing hearing identified appellant as "Deandre Noble Stanfill [¶] aka Deandre Stranfill, Deaundre Stanfield." This court affirmed the judgment in appellant's direct appeal in case No. F08906045, in *People v. Deandre Noble Stanfill* (F059225, April 6, 2011) (*Stanfill*).

When the trial court began the resentencing proceedings in this case No. F08906045, the minute orders initially identified appellant as "Deandre Noble Stanfill." On November 15, 2022, the court conducted a status hearing and asked the

2.

## FACTS[3]

"On July 23, 2008, Roxanne Arnold bought some drugs from appellant, used the drugs, and then went to the home of Yvonne Lewis. According to the testimony of police officers Marvin Whittle and Christopher Fern, who arrived on the scene shortly after the subsequent events in question, Kenneth Carter, the brother of Lewis's boyfriend, arrived at the house around 8:00 in the evening to pick up Lewis and her two children. While Carter was putting the children's car seats into the back seat of the car, appellant walked up, holding a cup containing some sort of alcoholic beverage. Appellant and Carter had known each other for 15 or 16 years. Appellant saw Carter and said, 'Kenneth motherfucking Carter,' to which Carter replied, '[H]ey, man, what's up?' Appellant then said, '[T]his is the Dog Pound. Fuck Villa Posse.' Carter was concerned that children were nearby and asked appellant to leave. Appellant responded, '[W]hat do you mean get out of your yard? This is the Dog Pound,' and then walked away.

"Lewis came out of the house and was talking to Carter when appellant returned and stood by the rear passenger side of Carter's car. Appellant pulled out a nine-millimeter semiautomatic handgun from his waistband and pointed it at Carter and Lewis. Appellant asked, '[D]o you think I'm playing? Do you got a gun?' as he fired a shot into the right rear tire of the car. Lewis ran into the house and Carter followed. As Carter approached the front door, appellant fired several more shots into the car,

---

parties to clarify appellant's true name. Appellant's counsel stated it was "Deaundre Stanfield." The court asked appellant if that was correct and appellant said yes. Thereafter, the minute orders in the resentencing proceedings identified appellant either as "Deandre Stanfield" or "Deaundre Stanfield."

Appellant filed his notice of appeal in this case, in propria persona, as "DeAundre Stanfield" and this appeal is captioned accordingly.

**3** After notice to the parties, and without objection, this court takes judicial notice of the record and our nonpublished opinion in *Stanfill*, *supra*, F059225, appellant's direct appeal from the judgment in case No. F08906045, from which the following factual basis is taken.

3.

shattering the right rear window and putting a bullet hole through the driver's door. Carter yelled that he was going to call the police, to which appellant responded, '[F]uck the police. This is the Dog Pound.'

"Carter went into the house, closed the door and propped his feet against it because appellant tried to turn the door knob and kicked at the door. Eventually, appellant stopped and walked around the front yard. A few minutes later, appellant again tried to open the door, but Carter held it closed. Appellant again walked away, this time firing three or four more shots. Police responded to the scene shortly thereafter and located several nine-millimeter shell casings on the front lawn and a shell casing on the top of the trunk of the vehicle." (*Stanfill*, *supra*, F059225, at pp. 2−3.)

"At trial, Carter repeatedly testified 'I'm not sure' to all questions concerning the [shooting] incident. Detective William Andrews then testified that he interviewed Carter in January of 2009, after Carter had testified during a prior hearing that he could not recall what had happened. Carter told Andrews that he would testify in the same manner if called again because he had serious concerns that harm would come to him and his family. Specifically, Carter told Andrews that he was afraid appellant's associates could fire at the house from the open field across the street. Carter also told Andrews that he was more willing to testify truthfully if his family moved from the area, which was notorious Dog Pound territory." (*Stanfill*, *supra*, F059225, at p. 5.)

"[Detective Ronald Flowers, the prosecution's gang expert,] testified that appellant had been a validated member of the Dog Pound street gang for several years. Among the principal activities of the gang were drug sales, assault, and weapons offenses. The core of Dog Pound gang territory was located one block from Lewis's house. Villa Posse is a rival street gang.

"Lewis testified for the defense that she misidentified appellant when she called 911. Instead, she claimed to have given the operator appellant's name only because she

4.

had heard Carter, who was in the house with her when she heard shots, say he was going outside to see if appellant was out there." (*Stanfill*, *supra*, F059225, at pp. 3−4, 8.)

## PROCEDURAL BACKGROUND

On February 26, 2009, a second amended information was filed in the Superior Court of Fresno County case No. F08906045, charging appellant with committing the following offenses on July 23, 2008: counts 1 and 2, assault with a semiautomatic firearm on Kenneth Carter and Roxanne Arnold (§ 245, subd. (b)) with enhancements for personal use of a firearm (§ 12022.5, subd. (a)); count 3, possession of a firearm by a prohibited person (§ 12021, subd. (a)(1)); count 4, street terrorism (§ 186.22, subd. (a)); count 5, discharging a firearm with gross negligence (§ 246.3, subd. (a)); and count 6, shooting at an unoccupied vehicle (§ 247, subd. (b)); and alleged gang enhancements for counts 1, 2, 5, and 6 (§ 186.22, subd. (b)(1)), and a prior prison term enhancement (§ 667.5, subd. (b)).

**Conviction and Sentence**

On August 28, 2009, after a jury trial, appellant was convicted of all counts, and the firearm and gang enhancements were found true. The trial court found the prior prison term enhancement true.[4]

On December 11, 2009, appellant was sentenced to an aggregate term of 22 years four months based on the midterm of six years for count 1, plus 10 years for the gang enhancement and one year for the prior prison term enhancement; and a consecutive term of two years (one-third the midterm) for count 2, plus three years four months (one-third the midterm) for the gang enhancement. The trial court imposed concurrent terms for count 4 and 6, and stayed the sentences for counts 3 and 5, and the firearm enhancements attached to counts 1 and 2.

---

[4]    Appellant was convicted after his third jury trial; there had been two previous mistrials declared due to deadlocked juries. (*Stanfill*, *supra*, F059225, at pp. 1−2.)

5.

**Direct Appeal**

On April 6, 2011, this court filed the nonpublished opinion in appellant's direct appeal and rejected his evidentiary and prosecutorial misconduct claims. Appellant also argued there was insufficient evidence to support his conviction in count 4, street terrorism, based on *People v. Albillar* (2010) 51 Cal.4th 47 (*Albillar*). We rejected this claim and held the conviction was supported by substantial evidence. (*Stanfill*, *supra*, F059225, at p. 2.)[5]

**Dismissal of Count 4**

On March 23, 2017, the trial court filed an amended abstract of judgment in case No. F08906045, reflecting that appellant's conviction in count 4, street terrorism (§ 186.22, subd. (a)), and the concurrent term imposed for that count, were dismissed. Appellant's aggregate sentence remained 22 years four months.[6]

## APPELLANT'S FEDERAL CONVICTION

On June 18, 2018, appellant, while still serving his prison sentence for this case at CDCR, entered into a plea agreement with the United States Attorney's Office in case No. 1:16-CR-00069, that stated he had been charged in an indictment with conspiracy to commit murder in aid of racketeering (18 U.S.C. § 1959 (a)(5)) based on the following elements: "First, beginning on or about March 23 through April 1, 2016, an enterprise, specifically the Dog Pound Gang, affecting interstate commerce existed; [¶] Second, the

---

[5] *Albillar* held the substantive gang offense defined in section 186.22, subdivision (a) does not include "an unwritten requirement that 'felonious criminal conduct' that is promoted, furthered, or assisted be gang related." (*Albillar*, *supra*, 51 Cal.4th at p. 51.) *Albillar* also held "the scienter element" of the gang enhancement defined in section 186.22, subdivision (b) "requires only 'the specific intent to promote, further, or assist in *any* criminal conduct by *gang members*.'" (*Albillar*, at p. 51.)

[6] The instant record is silent as to the reason the trial court dismissed his conviction in count 4, the violation of the substantive gang offense defined in section 186.22, subdivision (a) in 2017.

Dog Pound Gang engaged in racketeering activity, including but not limited to prostitution of minor and adult females, narcotics trafficking, and access device fraud; [¶] Third, [appellant] conspired to commit the following crime of violence: murder of a member or associate of a rival criminal street gang; and [¶] Fourth, that [appellant's] purpose in conspiring to commit murder was to gain entrance to, or to maintain, or to increase his position in the enterprise."

On June 20, 2018, appellant appeared in the United States District Court, Eastern District of California, and pleaded guilty in case No. 1:16-CR-00069-LJO-SKO, to conspiracy to commit murder in aid of racketeering (18 U.S.C. § 1959 (a)(5)). On October 11, 2018, appellant was sentenced to 120 months (10 years) in federal prison.

## RECALL AND RESENTENCING

In or about 2023, appellant was identified by the CDCR as a person eligible for recall and resentencing pursuant to section 1172.75, because a prior prison term enhancement was imposed as part of his sentence.[7] On August 30, 2022, the trial court appointed counsel and placed the matter on calendar.

### Pre-Hearing Proceedings and Motions

On October 7, 2022, appellant, in propria persona, filed a motion in the trial court, and asserted he was entitled to be resentenced pursuant to the following provisions, without analysis or discussion: Assembly Bill No. 333 (2021−2022 Reg. Sess.) (Assembly Bill 333) and section 186.22, subdivision (b)(1); section 1385 and section 745; and Senate Bill No. 81 (2021–2022 Reg. Sess.).[8]

---

[7] The instant record does not contain CDCR's notice to the trial court. When the court convened the recall hearing, however, it stated that CDCR identified appellant "as a person who is eligible for review of his sentence" because he was sentenced to a prior prison term enhancement, pursuant to section 1172.75.

[8] Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 to address the trial court's ability to dismiss sentencing enhancements after consideration of certain mitigating circumstances. (*People v. Coleman* (2024) 98 Cal.App.5th 709, 723−724.) Section 745 is the Racial Justice Act. (*People v. Thompson* (2022) 83 Cal.App.5th 69,

On December 14, 2022, the trial court held a status hearing. Appellant's counsel stated appellant was concerned about whether the gang enhancements were still valid because of changes in the law. The prosecutor stated that she would recommend reducing appellant's sentence by four years, for an aggregate term of 18 years four months, but the parties were still discussing the gang enhancements. The court encouraged the parties to resolve the matter.

On January 25, 2022, the trial court held another status hearing. Appellant's counsel said appellant's release date based on his current sentence was 2026, the prosecutor had offered to reduce appellant's sentence by six years eight months that would effectively result in time served for appellant, but appellant wanted a full resentencing hearing and dismissal of the gang enhancements.

The trial court advised appellant that it would schedule a full resentencing hearing that may or may not result in his favor, but he would not receive a new trial. Appellant addressed the court and stated he wanted the court to grant his motion for resentencing. The court stated his motion would be considered at the resentencing hearing.

On January 27, 2023, appellant, again acting in propria persona, filed a motion for the trial court to take judicial notice of the trial record "REGARDING THE [I]LLEGAL GANG ENHANCEMENT … AND APPLY 'S.B. 333 [*sic*] TO OVERTURN THE CONV[I]CT[I]ON[,]' " and asserted he asked his attorney to make this motion but the attorney failed to do so.

On January 30, 2023, appellant filed another motion, in propria persona, to vacate the entirety of the judgment because Detective Flowers, the prosecution's gang expert at

96.) Aside from these passing references, appellant did not raise these claims again and they are not cognizable in this appeal.

As will be discussed below, Assembly Bill 333 amended section 186.22 as to the definitions of the gang substantive offense and enhancement, and enacted section 1109 regarding the introduction of gang evidence. (*People v. Burgos* (2024) 16 Cal.5th 1, 7 (*Burgos*); *People v. Tran* (2022) 13 Cal.5th 1169, 1206−1207 (*Tran*).)

trial, gave "PREJUDICIAL" testimony about his alleged gang membership that
" 'CONTAMINATED' " his trial in violation of Assembly Bill 333.

On February 15, 2023, the trial court held another status hearing. The prosecutor requested a full resentencing hearing because she had learned appellant was convicted of a federal offense while he was in state custody. Appellant's counsel stated he had just learned about the federal conviction from the prosecutor, and did not know about it when he discussed the possible resolution of this case with appellant. Counsel also stated that appellant was "adamant" that he wanted a retrial on the gang enhancements because of Assembly Bill 333.

## THE TRIAL COURT'S HEARING

On September 27, 2023, the trial court held the recall and resentencing hearing. Appellant was present with counsel. The court and the parties agreed appellant's sentence should be recalled to dismiss the prior prison term enhancement, and the court would conduct a full resentencing hearing.

Appellant's counsel argued the gang enhancements should be stricken because of the amendments enacted by Assembly Bill 333. Counsel further argued appellant did not receive a fair trial because the prosecution's gang expert had a conflict of interest, the expert's testimony violated appellant's federal and state rights to due process, and appellant was entitled to a new trial.

Appellant's attorney also argued that Assembly Bill 333 now required bifurcation of gang charges and evidence, and even if the trial court dismissed the gang enhancements, that would not eliminate the prejudice that resulted from the now-illegal introduction of the gang evidence at his trial. The court disagreed and stated the jury convicted appellant of committing criminal offenses with firearms, and those convictions were not dependent on the gang evidence.

The prosecutor stated appellant could not make a new trial motion at a section 1172.75 resentencing hearing. However, the prosecutor had reviewed the issues

9.

raised by the amendments enacted by Assembly Bill 333, and she was prepared to dismiss the gang enhancements. The prosecutor believed she could retry appellant on the gang charges but did not intend to do so. The prosecutor asked the court to resentence appellant by lifting the stays previously imposed for the section 12022.5 personal use enhancements attached to counts 1 and 2.

The prosecutor also addressed appellant's federal conviction, and stated that in 2018, while appellant was in state prison, he entered into an agreement with the United States Attorney to plead to a federal charge of conspiracy to commit murder in aid of racketeering (18 U.S.C. § 1959 (a)(5)), and he was sentenced to 120 months in federal prison. The trial court admitted certified records about the federal conviction and appellant's other offenses.

Appellant's counsel stated the updated probation report showed that he was an excellent prisoner, had a prison job, and took classes to improve himself. The trial court replied: "[H]e was an excellent prisoner other than his federal racketeering conviction." The prosecutor added that appellant's records showed he committed numerous rules violations while in prison.

### The Trial Court's Order

The trial court dismissed the prior prison term enhancement and the gang enhancements. The court denied appellant's motion for a new trial on the entirety of his case. The court noted that appellant's conviction in count 4 for street terrorism was stricken in 2017.

The trial court imposed an aggregate term of 19 years four months based on the midterm of six years for count 1, assault with a semiautomatic firearm, plus the upper term of 10 years for the section 12022.5, subdivision (a) personal use enhancement. The court found the upper term was appropriate because appellant "continued to show that he's a danger to society, even while incarcerated." As to count 2, assault with a semiautomatic firearm, the court imposed a consecutive term of two years (one-third the

10.

midterm), plus one year four months (one-third the midterm) for the personal use enhancement.  The court imposed a concurrent term for count 6 and stayed the terms imposed for counts 3 and 5.

On November 13, 2023, appellant filed a timely notice of appeal.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court.  The brief also includes counsel's declaration indicating that defendant was advised he could file his own brief with this court.  In response to our invitation, appellant filed a letter brief raising several issues as to the trial court's resentencing decisions and denial of his motion for a new trial.

## I.  Section 1172.75.

We begin with the statutory reason the trial court recalled appellant's sentence. "Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years. [Citation.]  Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) … amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses.  [Citations.]  Enhancements based on prior prison terms served for other offenses became legally invalid.  [Citation.]  The amendment was to be applied retroactively to all cases not yet final on January 1, 2020." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379−380 (*Burgess*).)

"Later, in 2021, the Legislature enacted Senate Bill No. 483 (2021−2022 Reg. Sess.)….  This bill sought to make the changes implemented by Senate Bill [No.] 136 retroactive.  [Citation.]  It took effect on January 1, 2022, and added former section 1171.1, now section 1172.75 …."  (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.)

Section 1172.75 establishes a mechanism to provide affected defendants a remedy for those legally invalid enhancements, and the resentencing process begins with

11.

corrections officials. (*People v. Cota* (2023) 97 Cal.App.5th 318.) "Subdivision (b) of section 1172.75 directs the Secretary of the [CDCR] and the correctional administrator of each county to 'identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) and … provide the name of each person … to the sentencing court that imposed the enhancement.' " (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.) "After the trial court receives from the CDCR and county correctional administrator the information included in subdivision (b) [of the statute], 'the court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a),' and if so, recall the sentence and resentence the defendant.' " (*Burgess*, at p. 380.)

At the resentencing hearing, section 1172.75 requires the trial court to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

"Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).)

Section 1172.75, subdivision (d) "vests the superior court with broad discretion based on an inherently factual inquiry" in resentencing a defendant, and we review the

resentencing order for an abuse of that discretion. (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856−857.)

"[A]bsent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1029−1030.)

### *Analysis*

In this case, the trial court recalled appellant's sentence and properly dismissed the prior prison term enhancement. In doing so, it recognized that it was required to exercise its discretion and conduct "a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402; § 1172.75, subd. (c).)

While the trial court granted the prosecution's motion to dismiss the gang enhancements, it declined to further reduce appellant's sentence because he "continued to show that he's a danger to society, even while incarcerated," referring to appellant's conviction for federal racketeering charges, an offense committed while he was in state prison. The court did not abuse its discretion when it resentenced appellant and declined to further reduce his sentence given its finding that a further reduction in his sentence would endanger public safety.

## II. Appellant's Contentions

Appellant filed a letter brief on appeal, and argues the trial court should have granted his motion for a new trial based on the provisions of Assembly Bill 333. He also

argues his appointed appellate counsel was ineffective for failing to raise this issue on appeal, and requests appointment of a new attorney.

## A. Assembly Bill 333

As previously explained, Assembly Bill 333 was enacted in 2021 and became effective on January 1, 2022. (*Burgos*, *supra*, 16 Cal.5th at p. 7; *Tran*, *supra*, 13 Cal.5th at p. 1206.) Assembly Bill 333 contains several provisions.

First, Assembly Bill 333 amended section 186.22 by imposing new substantive requirements to prove the gang enhancement (§ 186.22, subd. (b)) and the criminal offense of active gang participation (§ 186.22, subd. (a)). (*Burgos*, *supra*, 16 Cal.5th at p. 7.) In *Tran*, the California Supreme Court held that Assembly Bill 333's amendments to section 186.22 were ameliorative and retroactive to all cases not yet final as of the legislation's effective date pursuant to the rule of *In re Estrada* (1965) 63 Cal.2d 740, because they added " 'new elements to the substantive offense and enhancements in section 186.22 ….' [Citations.] These changes have the effect of 'increas[ing] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement,' with obvious benefits to defendants …." (*Tran*, *supra*, 13 Cal.5th at p. 1207.)

Second, as relevant to appellant's arguments herein, Assembly Bill 333 also enacted a new statute, section 1109, which requires bifurcation of trial on the gang substantive offense and gang enhancement from the other charges if requested by the defendant. (*Burgos*, *supra*, 16 Cal.5th at p. 7.)

Section 1109 states that when a defendant is charged with a gang enhancement under section 186.22, subdivisions (b) or (d), the gang enhancement "shall be tried in separate phases" if "requested by the defense," and the question of the defendant's guilt for the underlying offenses is tried first. If the defendant is convicted, then there shall be "further proceedings to the trier of fact on the question of the truth of the enhancement." (§ 1109, subd. (a)(1), (2).)

14.

Section 1109 further states that if the defendant is charged with the gang substantive offense in violation of section 186.22, subdivision (a), "this count shall be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime," but may be tried in the same proceeding as the gang enhancement. (§ 1109, subd. (b).)

In *Burgos*, the California Supreme Court held the bifurcation aspects of Assembly Bill 333, as enacted in section 1109, are not retroactive to cases that have already been tried, even if the appeals were pending and cases were not final at the time that section 1109 went into effect. (*Burgos*, *supra*, 16 Cal.5th at p. 8.) *Burgos* acknowledged the holding in *Tran*, but distinguished Assembly Bill 333's amendments to section 186.22 from the separate enactment of section 1109, which is "by design and function a procedural change affecting the sequence of trial proceedings in situations where the defendant elects to invoke the statute." (*Burgos*, *supra*, 16 Cal.5th at pp. 23, 26.) "[T]he *Estrada* inference of retroactivity does not extend to section 1109. *Estrada*'s principle of statutory interpretation infers retroactivity from statutory reductions in punishment, not from the type of prophylactic rules of criminal procedure embodied in section 1109's bifurcation provisions. Accordingly, the general presumption of prospective-only application applies to section 1109. The equal protection clauses of the federal and state Constitutions [citations] do not compel a different result." (*Burgos*, *supra*, 16 Cal.5th at pp. 8, 29−30, 31.)

In so holding, *Burgos* noted that "in some instances, the same gang evidence introduced to establish the elements of a gang enhancement might be admissible at a bifurcated trial on the underlying charge." (*Burgos*, *supra*, 16 Cal.5th at p. 23.) "[G]ang evidence may still be admissible where relevant to the underlying charges." (*Id*. at p. 25, fn. 8.)

The defendants in *Burgos* were convicted after a jury trial that was held prior to the effective date of section 1109; Assembly Bill 333 and section 1109 went into effect

15.

while defendants' appeals were pending. (*Burgos*, *supra*, 16 Cal.5th at pp. 8−9.) *Burgos* agreed with *Tran*, that Assembly Bill 333's amendments to section 186.22 were retroactive since the defendants' case was not yet final, and the gang enhancements in *Burgos* should be vacated. *Burgos* further held Assembly Bill 333's enactment of section 1109 on bifurcation of gang evidence was not retroactive, even though defendants' appeals were pending when the new statute became effective, since defendants' trials had already been held. (*Burgos*, *supra*, 16 Cal.5th at pp. 9−10.)

## B.  Analysis

Appellant argues Senate Bill No. 483 (2021–2022 Reg. Sess.) required the trial court to apply all newly enacted laws at his section 1172.75 resentencing hearing, including the provisions of Assembly Bill 333 and section 1109, on the bifurcation of gang evidence at trial. Appellant argues he was entitled to retroactive application of section 1109, and a new trial was required where the gang evidence will be bifurcated from the other charges. Appellant insists that even though the court dismissed the gang enhancements (§ 186.22, subd. (b)) at the resentencing hearing, and his conviction in count 4 for the gang substantive offense (§ 186.22, subd. (a)) was previously dismissed, the admission of the gang evidence at his trial was prejudicial and violated his due process rights. As a result, appellant asserts that his remaining convictions must be reversed and the matter remanded for a new trial, where the gang evidence would be bifurcated at the trial on the other charges.

Appellant's arguments lack merit. While Assembly Bill 333's substantive amendments to section 186.22 have been held retroactive, the California Supreme Court clarified the legislation's enactment of the new section 1109 is not retroactive even to cases that were pending on appeal when the legislation went into effect on January 1, 2022. (*Burgos*, *supra*, 16 Cal.5th at p. 8.) Even if the trial court's recall of appellant's sentence amounted to his case not yet being final, the court correctly rejected his claim

that section 1109 required a new trial with bifurcation of the gang evidence because, as in *Burgos*, his trial concluded before section 1109 became effective.[9]

Appellant further argues his appointed appellate counsel was prejudicially ineffective for filing the *Wende* brief in this appeal, because appellant told counsel to "argue the merits of the case which are due process rights violations," and requests appointment of another attorney. An appellate counsel does not commit ineffective assistance by filing a *Wende* brief since "the appellate court … review[s] the entire record to determine whether there is any arguable issue." (*People v. Kelly* (2006) 40 Cal.4th 106, 118.) Moreover, an attorney does not render ineffective assistance by declining to raise meritless objections. (*People v. Price* (1991) 1 Cal.4th 324, 387.)

*Burgos* was decided on June 3, 2024. (*Burgos*, *supra*, 16 Cal.5th 1.) Appellate counsel filed the *Wende* brief in this appeal on August 23, 2024. Appellant responded to this court's notice and filed a supplemental letter brief. We have addressed the issues raised in his supplemental brief and furthermore exercised our discretion to conduct our own independent review of the record. There are no arguable issues, counsel was not ineffective, and the trial court did not abuse its discretion at the resentencing hearing.

## DISPOSITION

The trial court's judgment entered at the September 27, 2023, resentencing hearing is affirmed.

---

[9]     Whether a remand solely to correct sentencing issues limits the trial court's jurisdiction to consider the effects of Assembly Bill 333's amendments to section 186.22 is an issue that has divided the appellant courts, and the question is pending before the California Supreme Court. (See *People v. Lopez* (2023) 93 Cal.App.5th 1110, review granted Nov. 15, 2023, S281488; *People v. Mitchell* (2023) 97 Cal.App.5th 1127, review granted Feb. 21, 2024, S283474.) As explained above, however, *Burgos* conclusively held that Assembly Bill 333's enactment of section 1109 is not retroactive. (*Burgos*, *supra*, 16 Cal.5th at p. 8.)